IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 7, 2008

## RONNIE CHARLESTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2003-B-883     Steve Dozier, Judge**

---

**No. M2007-02864-CCA-R3-PC - Filed December 9, 2008**

---

Aggrieved by the denial of his 2007 petition for post-conviction relief from his 2005 Davidson County Criminal Court convictions for felony murder, especially aggravated robbery, and second degree murder, the petitioner, Ronnie Charleston, appeals. In this appeal, he contends that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Ronnie Charleston.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On March 16, 2005, a Davidson County jury convicted the petitioner of the November 17, 2002 felony murder, especially aggravated robbery, and second degree murder of the victim, Isearal Elbaz. The trial court merged the conviction of second degree murder into the felony murder conviction, and a life sentence was imposed by operation of law. *See* T.C.A. § 39-13-204 (1997). Following a sentencing hearing, the trial court imposed a sentence of 55 years for the especially aggravated robbery conviction to be served consecutively to the life sentence. The petitioner filed a timely appeal to this court challenging the sufficiency of the convicting evidence and the effective sentence. This court affirmed both the convictions and sentences. *See State v. Ronnie R. Charleston*, No. M2005-02255-CCA-R3-CD (Tenn. Crim. App., Nashville, Jan. 5, 2007).

The facts, as summarized by this court on direct appeal, established that the victim owned a restaurant in the Bellevue Mall called "Family Cuisine" and was "in the process of opening

a bakery in the mall called the 'Sweet Tooth Café," which was located "four stores down from the restaurant." *Id.*, slip op. at 2. Approximately two weeks before his death, the victim hired the petitioner to work in the kitchen of the restaurant. Evidence established that the petitioner had access to a "specific knife [that] was kept in the kitchen area of the restaurant behind the kitchen door" and that the victim "would usually leave the back door of the bakery propped open in order to move from restaurant to bakery via the service entrance." *Id.* On November 17, 2002, the victim's daughter, Mazel Elbaz, "observed her father, the [petitioner], and a building contractor, Marty Mullennex, head over to the bakery." *Id.* Later that afternoon, Ms. Elbaz went to the bakery to ask her father for help with the "lunch crowd" and found that "the door was barely propped open" and "that the Coke machine was 'kind of half off the counter like it fell over.'" *Id.*, slip op. at 3. She walked to the restroom area of the bakery and "saw her father lying face down between the toilet and the wall." *Id.* Ms. Elbaz recalled seeing the petitioner walk hurriedly toward the mall exit approximately one-half hour before she found her father's body. *Id.*

Other evidence established that the petitioner was aware that the victim typically carried a large amount of cash, that the victim was carrying more than $500 on the day of his murder, and that the victim died as a result of multiple stab wounds. Later that day, the petitioner went to a Murfreesboro Road bar and paid for a beer "in cash taken from a roll of money." *Id.*, slip op. at 4. The tavern's owner, Lewis Scruggs, saw the petitioner linger near the pool table and, on the next day, he "found a billfold in one of the pockets of the pool table. He opened the wallet and saw a photograph of the victim." *Id.* Deoxyribonucleic Acid ("DNA") testing linked the petitioner to the victim, the victim's stolen van, and the crime scene. *Id.*, slip op. at 6-7.

The petitioner filed a timely petition for post-conviction relief, challenging his convictions on grounds that they were the result of various violations of his constitutional rights, including the right to the effective assistance of his trial counsel. He claimed that his counsel were ineffective by failing to object to the constructive amendment of the indictment, failing to move for a post-verdict judgment of acquittal, failing to object to the use of his prior robbery convictions in sentencing, failing to request a change of venue, failing to adequately investigate the case, failing to prepare for trial, failing to request funding for an expert in blood spatter evidence, failing to request a psychological examination, and preventing him from testifying in his own behalf. By preliminary order, the post-conviction court appointed counsel, who filed an amended petition alleging that the petitioner's trial counsel were ineffective and reiterating many of the petitioner's original claims in that regard.

In the evidentiary hearing, the petitioner asserted that his trial counsel should have filed a motion to change venue, explaining, "Because of all the pretrial publicity that was had pertaining to this case. The public knew more about this case than I did at the time." As proof of the excessive publicity, the petitioner testified, "I saw it on TV, myself, and so did people that was incarcerated with me up in the jail." The petitioner insisted that the media had called him names and had branded him "a villain." The petitioner acknowledged that the news reports in question actually occurred during the trial, rather than prior to trial, and conceded that the trial court instructed the jurors to refrain from reading newspapers or watching television during the trial.

The petitioner also complained that his trial counsel had encouraged him not to take the stand but admitted that counsel told him the decision was his. He stated that he followed counsel's advice because he "felt very confident that they did a hundred percent . . . job in representing [him]." The petitioner claimed that he "wasn't stable mentally" at the time of the offenses and that, as a result, his counsel should have requested a psychological evaluation. He stated that he had "[d]rug[] and mental health" issues "[b]ack in the 70's."

Lead trial counsel testified that he had "vague recollections" of questioning the jury about pretrial publicity but that, because the petitioner's first trial had ended in a mistrial, he "would have a lot of difficulty separating the voir dire from the first trial from the voir dire in the second trial." Lead counsel recalled that the petitioner's case had "generated a lot of publicity at the time of the crime in 2002" but testified that there was no "significant" publicity prior to the second trial.

Lead counsel testified that he did not request a psychological evaluation of the petitioner and stated that he had not "had a prolonged discussion" with the petitioner regarding his mental health. Lead counsel stated that neither he nor co-counsel believed that an evaluation was necessary.

By written order detailing findings of fact and conclusions of law, the post-conviction court denied relief. The post-conviction court found no merit to the petitioner's claim that his trial counsel had denied him the right to testify. The court refused to "accredit the argument that [the petitioner] did not understand" the right to testify given that the petitioner had testified during his first trial and that the trial court conducted a *Momon* hearing.[1] The court also found that the petitioner had failed to prove his allegations regarding pretrial publicity and the need for a change of venue. The court concluded that the petitioner had established no basis for a pretrial psychological examination and that, as a result, trial counsel were not deficient for failing to request one.

In this appeal, the petitioner contends that his trial counsel were ineffective by failing to request a change of venue and by failing to request a psychological examination. The State submits that the petitioner has failed to establish his claims by clear and convincing evidence. We agree with the State.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

---

[1]In *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), our supreme court implemented a procedure requiring counsel to question the defendant on the record but outside the presence of the jury regarding his decision not to testify.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. *Id.* at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. *Id.* at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

*Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In this case, although the petitioner testified that his was a high profile case which generated considerable media coverage, he offered no other evidence to corroborate his testimony, which was not accredited by the post-conviction court. Further, as the post-conviction court noted, "[e]ven if the petitioner's allegation were true, there is no proof that any jurors viewed the news broadcast." In consequence, the petitioner has failed to establish that his attorneys performed deficiently by failing to request a change of venue.

Despite his assertion that his trial counsel should have requested a pretrial psychological evaluation, the petitioner conceded that he had not asked for an evaluation and that he had not experienced any documented mental health problems since "back in the 70's." Moreover, the petitioner presented no proof at the evidentiary hearing to suggest that he suffered from any

mental disease or defect.  Under these circumstances, we cannot say that trial counsel were deficient in not asking for a psychological evaluation.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE